IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSE DANIELS, *

    Plaintiff, *

v. * Civil Action No. BPG-09-1741

MICHAEL J. ASTRUE, *
Commissioner of
Social Security, *

    Defendant. *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff, Rose Marie Daniels, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (ECF Nos. 14, 24.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

## I. Background

Plaintiff filed for DIB and a period of disability on August 28, 2006, alleging that she became disabled due to, inter alia, anxiety, depression, and symptoms associated with Meniere's Disease.[1] (R. at 11.) Her application was denied initially and on reconsideration. (R. at 54-58.) On March 25, 2008, plaintiff, represented by an attorney, testified at a hearing before Administrative Law Judge ("ALJ") Judith A. Showalter. (R. at 23-53.) Also testifying was a qualified vocational expert. (R. at 49-53.) On May 27, 2008, the ALJ determined that plaintiff is not disabled under the relevant sections of the Social Security Act and, accordingly, denied her application for benefits. (R. at 11-21.) On May 1, 2009, the Appeals Council denied review, making the ALJ's decision final and reviewable. (R. at 1-5.) Plaintiff timely sought judicial review.

## II. Standard of Review

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d

---

[1] Meniere's Disease is a "nonsuppurative disease of the labyrinth with edema," and is characterized by "hearing loss, tinnitus, and vertigo." Dorland's Medical Dictionary 546 (31st ed. 2007). Vertigo is defined as "an illusory sense that either the environment or one's own body is revolving," which "may result from diseases of the inner ear or may be due to disturbances of the vestibular centers or pathways in the central nervous system." Id. at 2080. Tinnitus is "a noise in the ears,

1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five-step analysis. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987).

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.
>
> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.
>
> (3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

---

such as ringing, buzzing, roaring, or clicking." Id. at 1956.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

## III. Discussion

In her memorandum in support of her motion for summary judgment, plaintiff expressly argues that the ALJ erred in five respects. (ECF No. 14-1 at 5-8.) First, plaintiff argues that the ALJ failed to discuss what weight she afforded the assessment of the state agency consulting psychologist, Diana Walcutt, Ph.D. (Id. at 5-6.) Second, plaintiff argues that the ALJ used an improper "sit and squirm test." (Id. at 6-7.) Third, the ALJ "made contradictory findings about the duration of Daniels [sic] mental impairment." (Id. at 7.) Fourth, the ALJ erred in concluding that plaintiff's limitations do not meet or medically equal Listing 2.07. (Id. at 7-8.) Fifth, the ALJ "failed to adjudicate all of Daniels [sic] alleged impairments." (Id. at 8.)

In addition, plaintiff argues in the "statement of facts" section of her memorandum that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 14-1 at 3-4.) A

4

discussion of plaintiff's five express arguments and plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence follows.

**A. The ALJ's Consideration of Dr. Walcutt's Opinion**

On December 14, 2006, Maryland Disability Determination Services ("DDS") consultant Diana Walcutt, Ph.D., reviewed plaintiff's medical reports and completed a "Mental Residual Functional Capacity Assessment." (R. at 293-96.) The ALJ did not expressly consider Dr. Walcutt's assessment in formulating her opinion. Plaintiff argues that the ALJ's failure to do so constitutes a reversible error because, according to plaintiff, Dr. Walcutt concluded that plaintiff's limitations in social functioning and maintaining concentration, persistence, and pace are more severe than the limitations set forth in the ALJ's RFC. (ECF No. 14-1 at 5-6 (citing Montgomery v. Schweiker, 529 F. Supp. 124, 129 (D. Md. 1981) (failure to comment on medical evidence contradicting ALJ's opinion leads to an inference that such evidence was not considered)).)

Dr. Walcutt's conclusions, however, do not contradict the ALJ's RFC. As noted, the ALJ concluded that plaintiff can only perform "simple unskilled work," with "no more than occasional contact with co-workers and supervisors; isolated work only; no production pace work; and only occasional independent decision-making." (R. at 19.) Consistent with this opinion, Dr. Walcutt

concluded that plaintiff has "moderate" limitations in these areas. (R. at 307.) Indeed, if anything, Dr. Walcutt's opinion indicates that she concluded that plaintiff's limitations are less severe than the limitations noted by the ALJ. (See R. at 295 ("[C]laimant functions in a generally independent fashion and can meet various personal needs from a mental standpoint. The claimant is capable of completing daily living functions within the constraints of mental and cognitive status. . . . The claimant appears to have the ability to interact and relate with others socially. . . . The claimant retains the capacity to perform work-related tasks from a mental health perspective.).) Accordingly, this argument fails.

### B. Whether the ALJ Conducted an Improper "Sit and Squirm Test"

In determining plaintiff's RFC, the ALJ considered plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her alleged symptoms. (R. at 16-18.) While the ALJ found that plaintiff's impairments can be reasonably expected to produce her alleged symptoms, the ALJ concluded that plaintiff's subjective complaints were not entirely credible. (R. at 16.)

Plaintiff argues that the ALJ erred by solely basing this credibility determination on her own lay observations of plaintiff's demeanor at the hearing, or in other words, using an impermissible "sit and squirm test." (ECF No. 14-1 at 6 (citing

Wander v. Schweiker, 523 F. Supp. 1086 (D. Md. 1981).) Specifically, plaintiff cites to the ALJ's findings that plaintiff "had no difficulty hearing the undersigned or any of the participants at the hearing" and "was able to remember her medical history in great detail and articulately describe her condition." (ECF No. 14-1 at 6 (citing R. at 16).)

As plaintiff argues, an ALJ may not base a credibility determination solely on their observations of a claimant's demeanor at the hearing. See Jenkins v. Sullivan 906 F.2d 107, 108 (4th Cir. 1990). Nonetheless, an ALJ may include observations of the claimant as part of their credibility determination. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Further, an ALJ's credibility determinations are generally afforded great weight. Id.

In the instant case, while the ALJ cited her own lay observations of plaintiff's demeanor at the hearing in evaluating plaintiff's credibility, the ALJ also relied on other evidence, including notes from plaintiff's medical records. (See, e.g., R. at 17 (citing plaintiff's audiologist's conclusions that plaintiff's "right ear had normal hearing sensitivity and her left ear had borderline normal hearing sensitivity," that plaintiff had "bilateral normal middle ear functions," and "ENG and caloric testing . . . were normal"); R. at 18 (citing Dr. Tim Schneider's conclusion during an ENT exam on February 12, 2007

7

that plaintiff exhibited "no subjective vertigo"); id. (noting that during a November 8, 2006 consultative psychological evaluation, plaintiff did not display any symptoms of vertigo and her "memory was tested to be slightly below average").) Accordingly, the court rejects plaintiff's argument that the ALJ improperly applied a "sit and squirm test."

   **C. The ALJ's Conclusion that Plaintiff's Mental Impairment Does Not Satisfy the Durational Requirements of 20 C.F.R. § 404.1509**

As part of her RFC analysis, the ALJ also noted that plaintiff received mental health treatment from May to August 2004, apparently stopped receiving treatment, and then resumed treatment in November 2007. (R. at 19.) Thus, according to the ALJ, "as of the date of the this [sic] decision [May 27, 2008], the claimant has been in mental health treatment for less than one year and for a severe impairment to be disabling it must last (or be expected to last) at a severe level for a continuous period of 12 months (20 CFR 404.1509)." (Id.)

Plaintiff argues that the ALJ erred in reaching this conclusion. (ECF No. 14-1 at 7.) Plaintiff, however, does not appear to take issue with the substance of the conclusion, but instead argues that the ALJ considered this issue at the wrong step of her analysis, i.e., as part of her RFC determination prior to step four rather than as part of her step two analysis. (Id.) In light of this error, plaintiff contends that the ALJ's

8

finding, as part of her RFC determination, that plaintiff's mental impairments do not meet the durational requirements of 20 C.F.R. § 404.1509 contradicts the ALJ's step two finding that plaintiff's anxiety and depression were "severe" impairments. (Id.)

This technical argument is unpersuasive.  Even if plaintiff is correct that the ALJ should have considered whether plaintiff's mental impairment met the durational requirements of 20 C.F.R. § 404.1509 at step two of her analysis rather than as part of her RFC determination, plaintiff does not point to any evidence contradicting the ALJ's substantive conclusion that plaintiff's mental impairment lasted for a continuous period of twelve months.  Thus, it is not clear, and plaintiff does not explain, what impact this error had on the ALJ's decision.  In any event, the ALJ cited other substantial evidence in support of her conclusion that plaintiff's mental impairments were not disabling.  (See R. at 18-19 (discussing inconsistencies between plaintiff's treating therapist's opinion and other evidence in the record, noting that plaintiff was well-spoken and mentally organized at her hearing and at two consultative evaluations, and that plaintiff was consistently able to interact with her health care providers).)

### D. The ALJ's Listing 2.07 Analysis

At step three of the sequential analysis, the ALJ concluded

9

that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings. Plaintiff argues that the ALJ erred in concluding that plaintiff's impairments do not meet or medically equal Listing 2.07, disturbance of labyrinthine-vestibular function (including Meniere's disease), because "at least two of Daniels' ENGs were incomplete because of vertigo."[2] (ECF No. 14 at 7 (citing R. at 263, 250).)

In order to meet Listing 2.07, a claimant must exhibit both "disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests" and "hearing loss established by audiometry."[3] The ALJ found that Listing 2.07 was not met, "because on December 29, 2004, caloric testing by an audiologist was normal." (R. at 14.) Thus, regardless of whether the record contains incomplete ENGs, the ALJ's conclusion was supported by substantial evidence, and plaintiff's argument fails.[4]

---

[2] An electonystagmogram (ENG) measures normal eye movement and involuntary rapid eye movements. WebMD, Electronystagmogram (ENG), http://www.webmd.coum/brain/electronystagmogram-eng. It is performed to see whether there is damage to the inner ear, brain, or nerves connecting them and whether such damage is causing vertigo, dizziness, or a loss of balance. Id.

[3] Caloric testing of the ears is one portion of an ENG. Id.

[4] Plaintiff also argues that the ALJ erred in concluding that Listing 2.07 was not met because "SSR 96-9p indicates that if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base." (ECF No. 14-1 at 7-

### E. The ALJ's Alleged Failure to Adjudicate All of Plaintiff's Impairments

Plaintiff's fifth argument is that the ALJ erred in her step two analysis by failing to consider plaintiff's "heart impairment, which was serious enough to warrant stenting after it was revealed in November 2007 that she had a heart attack." (ECF No. 14-1 at 8.)

The record indicates that, beginning in early 2007, plaintiff began experiencing episodes of chest pain. (R. at 400-03.) Plaintiff's treating physician, Dr. Moffett, referred plaintiff to a cardiologist, John R. Condit, Jr., D.O., who examined plaintiff on February 15, 2007 and March 6, 2007. (R. at 400-01.) According to Dr. Condit's March 6th report, plaintiff had an episode of chest pain on January 20, 2007, for which she received treatment at a clinic in Easton, Maryland. (R. at 401.) Dr. Condit noted, however, that plaintiff's evaluation at that clinic was "unremarkable." (Id.) In addition, according to Dr. Condit's report, plaintiff had not had

---

8.) It is unclear what relevance this point has to the ALJ's Listing 2.07 analysis. See Listing 2.07 (claimant must provide evidence of: "(A) Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and (B) Hearing loss established by audiometry.").

Plaintiff also challenges the ALJ's failure to evaluate plaintiff's obesity in determining whether Listing 2.07 was met. (ECF No. 14-1 at 8.) Plaintiff, however, does not articulate, and it is not readily apparent, how her obesity is related to a disturbance of labyrinthine-vestibular function.

chest pain before January 20, 2007, and has not had it since then. (Id.)

Dr. Condit further noted that plaintiff's blood pressure was "within normal limits." (R. at 400.) He assessed plaintiff with, inter alia, elevated body mass index ("BMI"), hypertension, and hyperlipidemia. (R. at 401.) In addition, Dr. Condit's report indicates that he believed that plaintiff's symptoms related to her chest pain could be treated with diet and exercise. (See id. ("[Plaintiff] seems motivated to begin a real diet and exercise program, so I will give her six months to work on this. If no significant weight loss and office blood pressure still elevated, I will try adding an [ACE inhibitor[5]].").)

It does not appear that plaintiff visited Dr. Condit between March and October of 2007. On October 25, 2007, however, plaintiff reported to Memorial Hospital in Easton, Maryland with chest pain. (R. at 411.) Shortly thereafter, on November 6, 2007, plaintiff visited Dr. Condit. (R. at 420-21.) According to Dr. Condit's report, plaintiff had an "inferior wall non-Q-wave myocardial infarction[6] on 10/24/07" and "received a bare metal stent in her [right coronary artery] to reverse a total

---

[5] An angiotensis-converting enzyme inhibitor, or an ACE inhibitor, is used for the treatment of hypertension. Dorland's at 954.

[6] A myocardial infarction is defined as the "gross necrosis of the myocardium as a result of interruption of the blood supply to the area." Dorland's at 948.

12

occlusion."[7]  (R. at 420.)  Dr. Condit enrolled plaintiff in cardiac rehab and referred her to a nutritionist.  (R. at 421.)

On February 12, 2008, plaintiff had a follow-up visit with Dr. Condit.  (R. at 418-419.)  According to Dr. Condit's report, plaintiff "remain[ed] stable from a cardiac standpoint, suffering no recurrent angina or congestive symptoms."  (R. at 418.)  Dr. Condit made no changes to her medical regimen and advised plaintiff to return in six months.  (R. at 419.)

At her hearing before the ALJ on March 25, 2008, the ALJ examined plaintiff about her heart-related impairments.  (R. at 35-36.)  Plaintiff testified that she is on several medications for her heart.  (R. at 36.)  She further testified that she has no chest pain, coughing, wheezing, shortness of breath, or similar symptoms during the average day.  (Id.)  Finally, plaintiff testified that she visits Dr. Condit every six months "just for follow-ups and blood work just to see how [her] cholesterol and triglycerides and things like that are doing." (Id.)

At step two of her analysis, the ALJ considered whether plaintiff's blood pressure was a severe impairment and determined that it was not because, on March 6, 2007, plaintiff's blood pressure was determined to be within normal limits. (R. at 14 (citing R. at 400).)  While the ALJ did not expressly discuss

---

[7] An "occlusion" is an obstruction.  Dorland's at 1330.

plaintiff's October 2007 heart attack at this part of her opinion, the ALJ discussed this incident as part of her RFC determination. (See R. at 16 ("[Plaintiff] had a heart attack in October and underwent an angioplasty and stenting. She sees a cardiologist every six months but has no coughing, wheezing or shortness of breath.").)

As noted, plaintiff argues that the ALJ's failure to specifically discuss plaintiff's October 2007 heart attack at step two of her opinion constitutes a reversible error. (ECF No. 14-1 at 8.) An impairment is considered severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities," such as walking or lifting, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521(b). On the other hand, an impairment is not considered severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ's findings at step two, like all of his findings, must be supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the ALJ generally has a duty to explain his findings by making specific references to evidence supporting his conclusions, including the reasons for rejecting evidence that contradicts his findings. Smith v.

Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986). This duty, however, is only triggered when the evidence in the record generates an issue as to the severity of the plaintiff's impairments. Cf. Schoofield v. Barnhart, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (remand to be expected if evidence in record "clearly generates an issue as to a particular listing" and ALJ fails to perform step three Listings analysis); Huntington v. Apfel, 101 F. Supp. 2d 384, 390-92 (D. Md. 2000) (ALJ did not have duty to compare evidence in record to criteria of relevant Listings during step three analysis because there was not "ample evidence" in record to support determination that plaintiff met or equaled any Listing).

The court concludes that the ALJ adequately explained her findings regarding plaintiff's heart-related impairments in light of the evidence in the record. First, the ALJ set forth an express finding regarding plaintiff's blood pressure, which is related to the episodes of chest pain and the heart attack she experienced in 2007. (R. at 400-01.) Second, the court concludes that the evidence in the record does not generate an issue as to the severity of any impairments specifically related to plaintiff's October 2007 heart attack in light of plaintiff's testimony that she does not experience chest pain, coughing, wheezing, shortness of breath, or similar symptoms, and Dr. Condit's February 12, 2008 report that plaintiff is "stable from

a cardiac standpoint."[8] Accordingly, the ALJ did not err by not specifically discussing plaintiff's heart attack as part of the step two analysis.

**F. The ALJ's RFC**

Plaintiff also argues in the "statement of facts" section of her memorandum that the ALJ's ultimate RFC conclusion is not supported by substantial evidence. (ECF No. 14-1 at 3.)[9] Specifically, according to plaintiff, "[a]lthough the ALJ rejected all of the medical opinion evidence of Daniels' treating physician and therapist there is nil medical opinion evidence to support the ALJ's ultimate RFC." (Id.)

The determination of RFC is a function-by-function assessment, based upon all of the relevant evidence, of what work-related activities a claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945; Social Security

---

[8] In any event, even if the ALJ erred by not setting forth a specific finding regarding plaintiff's heart attack at step two, the court cannot conclude that this failure is a reversible error since the ALJ considered this impairment in formulating plaintiff's RFC (R. at 16, 18). See Pittman v. Astrue, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008) (ALJ's failure to consider severity of claimant's back pain at step two not reversible error since ALJ considered this impairment in formulating claimant's RFC); see also Ottman v. Barnhart, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (ALJ did not err by failing to determine whether anxiety and pain disorders were "severe" at step two where evidence of disorders considered in reaching conclusion at step five).

[9] Even though plaintiff articulated this argument in the "statement of facts" section of her memorandum, defendant's

Ruling ("SSR") 96-8P. "[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments" and provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; see Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (ALJ must evaluate the effect of all of plaintiff's impairments and adequately explain his RFC findings). Like all aspects of the ALJ's opinion, the ALJ's RFC determination must be supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

As noted, the ALJ concluded that plaintiff is not totally disabled, but instead retains the RFC to perform heavy exertion work with various restrictions, e.g., she can only have moderate exposure to background noise; she can complete only simple, unskilled work; and she can only maintain occasional contact with co-workers and supervisors. (R. at 15-19.) In reaching this conclusion, the ALJ relied on the following evidence:

(1) Plaintiff's testimony that she attempted to work from home before she was terminated from her last job in 2005 and looked for work after she was terminated from this job. (R. at 16.)

(2) The ALJ's own observations that plaintiff had no difficulty hearing the ALJ, no observable distress, and

---

motion contains an extensive response. (ECF No. 24-1 at 29-40.)

was able to remember her medical history in great detail and articulately describe her condition. (Id.)

(3) The absence of any reported observations of plaintiff experiencing vertigo in plaintiff's medical records. (Id.)

(4) Plaintiff's ENG and caloric testing were normal. (R. at 16-17 (citing R. at 249).)

(5) Plaintiff reported to one of her examining physicians, H. William Friedel, M.D., that her vertigo lasts "only seconds in duration." (Id. (citing R. at 236).)

(6) Plaintiff reported to her treating physician, Karen Moffett, M.D., in June 2007 that she walks three times per week. (R. at 17 (citing R. at 482).)

(7) Maryland DDS consulting physician Christian E. Jensen, M.D. reported that, during a consultative physical evaluation of plaintiff on November 23, 2006, plaintiff's gait and station were normal, she did not use an ambulatory aid, and she could get on the scale and exam table with no problem. (R. at 18 (citing R. at 281-84).)

(8) Maryland DDS consulting psychologist Bruce D. Hutchinson, Ph.D. reported that, during his psychological evaluation of plaintiff on November 8, 2006, plaintiff sat for her entire testing, and there was no indication that she displayed any symptoms of vertigo or needed to lie down. (Id. (citing R. at 272-76).)

(9) Plaintiff attended and functioned at a large number of medical appointments outside of her home. (R. at 17.)

(10) There are no records of plaintiff receiving mental health treatment between August 2004 and November 2007. (R. at 19.)

Taken together, the court concludes that this evidence constitutes substantial evidence in support of the ALJ's ultimate

RFC conclusion.[10]

---

[10] To the extent that plaintiff argues that the ALJ improperly discounted the opinions of her treating physician and treating therapist, this argument also fails. Plaintiff's treating physician, Dr. Moffett, opined that, during an eight-hour workday, plaintiff cannot stand and/or walk for any amount of time and can only sit for two hours; can carry zero pounds; can never climb, balance, stoop, crouch, kneel, or crawl; and that plaintiff is "totally disabled" due to her Meniere's disease. (R. at 317-21.) Plaintiff's treating therapist, Ms. Gail Weissert, LCSW, rated plaintiff's ability to make "occupational adjustments," such as following work rules, relating to co-workers, functioning independently, and maintaining attention and concentration, as "poor to none" and further opined that plaintiff's ability understand, remember, and carry out even simple job instructions is "poor to none." (R. at 428-29.)

The ALJ gave Dr. Moffett's and Ms. Weissert's opinions less than substantial weight because she found that their opinions are inconsistent with other substantial evidence in the record. (R. at 17-19.) For example, the ALJ cited evidence in the record that plaintiff was able to stand and walk without any problem during two separate evaluations, which contradicts Dr. Moffett's opinion that, during an eight-hour workday, plaintiff can never stand or walk. (R. at 17.) With respect to Ms. Weissert's opinion, the ALJ cited, inter alia: (1) notes indicating that plaintiff was articulate in describing her condition and her medical history at her two consultative examinations, as well as her own observations that plaintiff was "well spoken," "had a good memory of her medical history, and was mentally organized" at her hearing; (2) plaintiff's testimony that "she can read, write and do simple math – all of which would be impossible given Ms. Weissert's extreme conclusions"; and (3) the absence of any evidence that Ms. Weissert had contact with plaintiff from August 2004 through November 2007, which contradicts Ms. Weissert's statement that, based on her personal observations of plaintiff, plaintiff's limitations have existed since October 2004. (R. at 18-19.) This evidence constitutes substantial evidence in support of the ALJ's decision to afford Dr. Moffett's and Ms. Weissert's opinions less than substantial weight. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence).

**IV. Conclusion**

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (ECF No. 14) and grants defendant's Motion for Summary Judgment (ECF No. 24).  A separate order shall issue.


Date:  9/8/10                              ____/s/_____
                                           Beth P. Gesner
                                           United States Magistrate Judge